From: gmarkham@nwlink.com
Subject: Scandies Rose
Date: June 26, 2020 at 4:59:25 PM PDT
To: "michael A. Barcott" <Mbarcott@hwb-law.com>
Cc: Kevin Coluccio <kc@coluccio-law.com>, Joe Stacey <JStacey@maritimelawyer.us>, "Webster, Jess G." <Jess.Webster@millernash.com>

Mike

In response to your email of June 25, 2020 below, I've only cut and pasted your last three emails because your 6/22/20 email now says: "My intention is to look forward." So despite the past, (the analysis of which doesn't require my recitation of "facts" but rather merely reading a long trail of emails) *and* despite your adamant refusal to attend my requested Rule 37 good faith discovery conference, and based on that past, *my better judgment,* (particularly in light of what your below email merely say you <u>MAY</u> (underline your's) be able to do, I'm going to briefly delay filing my motion to compel at least over the weekend to try to get to the bottom of your professed reason for your refusal to produce in the past and let you try to promptly make good on this claim.

I question that because I had a phone call had earlier this week (prior to your 6/25/20 email) with Lt. Pels the USCG lawyer who is as I understand it is the investigating officer in this case in which we discussed the USCG's past refusal in response to various FOIA requests *to it* for a copy of the ROV material despite my clients extreme need to secure it in light of my like past problems in recovering it from you who with your clients' insureds in late January, contracted with Global to conduct the ROV video and prepare the material which you then voluntarily provided to the USCG. And in that phone call with Lt. Pels I was (predictably) told that the USCG only made the determination not to release *their copy* of the material because it was their policy not to release any of their investigative material until the board of inquiry to which I responded I fully understood.

But that she and I failed to understand the legal (or moral) basis for the Coast Guard's alleged direction to you not to share **your clients** copies of this material (and your insurance policies) with us? To which I understood her to say that was **never** the Coast Guard's direction (nor in the USCG's power to direct).

But as can be see from the exchange of emails below that is your claim now (despite initially early on indicating to me that you expected to release the material to us, while relating in depth much of what is shown on the ROV Video - specifically the very relevant presence of two of the crews bodies floating in the wheelhouse, and also a very visible oil sheen floating above the vessel). However a short time later you then reversed this position claiming you'd done so at the USCG's direction?

Now the USCG is a very big organization and this inconsistency might be explained by one of its staff not being aware of what the other is doing but I think the time has come for you (or it) to state definatively exactly who directed you not to release this material, when, why and under what legal principal because as I've repeatedly explained to you we the decedents need it for several reason (in addition to the immediate one that you describe in the below email) as so pressing not because we feel we have any legal right to direct what your clients do with the hull (allegedly in response to governmental direction) except insofar as it is the scene of the accident but because other than securing the ROV material from you that is otherwise economically beyond my client's reach) so in reality we have none.

On the contrary, the only interest that we can practically afford is with respect to the recovery of these deceased's **bodies** (that are shown on the ROV video to be in it). The ROV material in the video and particularly the Global "order of magnitude" report as to the cost of

remedial action and specifically whether in response to that proposal your clients might have to satisfy any governmental entity's interest in ordering remedial acts to prevent the oil pollution (to be paid out of the separate policy your clients have covering that) and if so whether divers would be involved in that in which event when diving on the vessel they could with little additional effort be able to retrieve the deceased remains there.  And that is the  extent of our further interest.

Which brings me to my next point. My conversation with Lt. Pels also evolved into what the Coast Guard had in mind to require your clients do in that regard and to my surprise (contrary to my understanding with you that it would be direct that), I was told by Lt. Pels that the USCG had taken the position that any direction with regard to the vessel (pollution or otherwise) was going to be up to the Alaska Department of Natural Resources as the vessel went down in Alaska state waters! Which if you will recall that was the initial reaction that I had until you led me to believe the contrary?

Accordingly Mike, I can represent that my clients are with Joe's email in so far as they that are agreeable to giving a non-disclosure agreement "in principal" but to only insofar as if you feel you have to have secure the permission from the USCG to do that (or control the agreements terms), absent some clear authority that you have to do that, my clients are only agreeable to delaying our motion for a very few days while you nevertheless try to do that. And further in that regard the non-disclosure could not simply be limited to the immediate families. We would require it to include (subject to there further non-disclosure 1) our client's experts  2) the AD&D carrier (as we still don't have death certificates and with this material we might not need it and 3) the Alaska Superior court (which could be under seal), to which Kevin might want to add the Washington probate court both for the same reason 4) the Federal Court also under seal 5) the Alaska DNR also under seal and 6) all only enforce until such time as your clients (or any

of their agents such as Global)   the USCG, Alaska DNR, or the Alaska or State Federal Court  release this material into the public domain.

Finally Mike if you are making this proposal in good faith we want your clients immediate production of all of the insurance policies (which clearly the USCG has no control over) to allow us to evaluate what coverage you in fact have for what ever agency is potentially directing you to take action with regard to the vessel and copies of your communications with the USCG and Alaska DNR regarding this so far. As we said before, despite the great emotional cost,  we were willing to consider working with your clients to hold down their costs, and when your clients refused to produce those documents to allow us to address that, we still held back so as to not interfere with your efforts. But if as Lt. Pels indicated in fact Alaska DNR has assumed jurisdiction of the pollution response, the feeling here is you failure to advise me of that does not evidence good faith?

So in addition to a very short fuse, be aware that I'm feeling the strong need to institute further contact with both the USCG and now the Alaska DNR directly particularly in view of your below email that suggests that without our cooperation you somehow believe nothing will be done until it is too late to do anythingin the year? This leads me to consider whether you haven't already made an arrangement with the Coast Guard or Alaska DNR? Please advise of the status or of your wishes in that regard?

sincerely

Jerry Markham
Attorney for Rainey, Cobban and
Ganacias pending estates

Begin forwarded message:

From: "Michael A. Barcott" <Mbarcott@hwb-law.com>
Subject: Scandies Rose
Date: June 25, 2020 at 1:48:13 PM PDT
To: Joe Stacey <JStacey@maritimelawyer.us>, "'gmarkham@nwlink.com'" <gmarkham@nwlink.com>, Kevin Coluccio <kc@coluccio-law.com>
Cc: "'Webster, Jess G.'" <Jess.Webster@millernash.com>

Gentlemen,

We may be willing to provide the ROV information and Insurance policies in the near future. Before considering turning over the ROV materials, however, we will need non-disclosure agreements from each of you.  The CG asked us not to turn the video over but if I can advise the CG that you have all agreed to non-disclosure, they may allow us to do so.  Please let me know.

Best Regards,
Mike Barcott

On Jun 22, 2020, at 10:25 AM, Michael A. Barcott <Mbarcott@hwb-law.com> wrote:

Jerry,

I will not take the time to dispute your various recitations of "fact" contained in your email.  Do not take my silence as to any of these things as an agreement on who said what.  My intention is to look forward.

Here is where we are.  The Court has issued an Order requiring Initial Disclosures on September 15.  Discovery is not yet open and likely will not be open for several months so there is no purpose for a Rule 37 conference and I will not attending.  We are asking a simple question and to date we have no answer to that question,  what are your clients' requests concerning leaving or retrieving the vessel?  Until that question is answered we cannot begin to move forward on a path to

resolution.  Summer will slowly slip by.  We may lose this chance to retrieve the vessel if that is the ultimate decision as to what will happen.  A removal in later years will be more difficult, if possible at all.

I trust you are advising your clients that you will not tell us their wishes in this regard because this very personal choice for the family members seems to have gotten hung up in the attempts at negotiations you reference below.

Best Regards,
Mike Barcott

**From:** "gmarkham@nwlink.com" <gmarkham@nwlink.com>
**Subject: Re: SCANDIES ROSE**
**Date:** June 20, 2020 at 11:05:10 AM PDT
**To:** "Michael A. Barcott" <Mbarcott@hwb-law.com>
**Cc:** Kevin Coluccio <kc@coluccio-law.com>, Joe Stacey <JStacey@maritimelawyer.us>, Nigel Stacey <NStacey@maritimelawyer.us>, Jim Jacobsen <JJacobsen@maritimelawyer.us>

Dear Mike

My last nights email was sent in some haste to show you that it was already in final draft before your afternoon emails were received. So while it contains a number of minor gramerical errors I think they don't effect its message except perhaps in the last paragraph (and not really then). But I will resend it correct here.

Accordingly I propose we have a FRCP 37 "good FAITH  discovery conference to  address the production prior to a motion to compel answer to Joes discovery and/or set an earlier PTC conference date so that we might try to get this case back on the track.  If not then I guess we will see how this all plays out?