UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF THE SCANDIES ROSE FISHING COMPANY LLC AND MATTSEN MANAGEMENT LLC, AS OWNERS AND/OR OPERATORS OF THE VESSEL SCANDIES ROSE, OFFICIAL NUMBER 602351, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CASE NO. C20-5376 BHS  **AMENDED** ORDER |

THIS MATTER is before the Court on the following Motions:[1] Claimant Rousseau-Gano's Motion to appoint an Independent Guardian Ad Litem, Dkt. 49; Claimants Lawler and Gribble's Motion for Leave to File Statutory Interpleader, Dkt. 50; and Claimant Rainey's Motion for leave to seek ARCP 90.2 court approval of the minor settlement in Alaska Superior Court, Dkt. 52.

The Court has reviewed all the materials submitted.

---

[1] Rainey's Motion to Consolidate Motions for Ruling, Dkt. 53, is **GRANTED**, as reflected in this Order.

# I.   BACKGROUND

On December 31, 2019 the fishing vessel *Scandies Rose* sank in rough seas off the Alaska Peninsula, near Sutwick Island, Alaska. Five men died: Brock Rainey, David Cobban, and Arthur Ganacias (whose estates are represented by Gerald Markham), Seth Rousseau-Gano (whose estate is represented by Kevin Coluccio), and the captain, Gary Cobban, Jr. (whose estate did not file a claim). Their bodies were not recovered. Two men, Jon Lawler and Dean Gribble, survived. They are represented by Joe Stacey.

On April 17, 2020, Scandies Rose Fishing Company (the vessel's owner and operator) and Mattsen Management (the provider of management services to the vessel) commenced this admiralty action for exoneration or limitation of liability. Dkt. 1. All the claimants[2] have Answered. The estates of the deceased assert wrongful death and survival actions for damages under the Jones Act and general maritime law. *See* Dkts. 14 and 17 (Amended Answers). The survivors allege that the *Scandies Rose* was not seaworthy and that its owners and management were negligent. They seek all permissible damages[3] under the law. *See* Dkts. 6 and 7.

In May 2020, Attorney Markham commenced a probate action in the Superior Court of Alaska at Kodiak for the Estate of Brock Rainey, based on the assertion that

---

[2] Lawler and Gribble each filed Jones Act claims in King County Superior Court in early April 2020, but those actions were stayed by this Court's Injunction, Dkt. 5. *See also* Lawler and Gribble's December 29, 2020, request for a status conference, Dkt. 37.

[3] Each claimant's operative Answer also seeks dismissal of this limitation action and asserts the right to a jury trial under the Savings to Suitors Clause, 28 U.S.C. § 1333.

Brock was domiciled in Alaska. *See Estate of Rainey*, Cause No. 3KO-20-30PR, Dkt. 63-1. In June 2020, Attorney Markham filed in that case a "Motion to Make a Finding of Brock Rainey's Presumptive Death." Dkt. 78-8 at 2.

Alaska Superior Court Judge Wallace held a hearing on July 20, 2020. Survivors Lawler and Gribble appeared and testified that Brock had died in the sinking. The Superior Court entered that day an "Order to Start Formal Probate and Appointing a Personal Representative," finding there was "clear and convincing evidence that Brock Rainey died from drowning when the fishing vessel SCANDIES ROSE sank on December 31, 2019." Dkt. 46-1.

The Rainey Estate claims that Brock had a minor daughter, L.W. Judge Wallace's Order listed Brock's heirs as Damien, son, and L.W., daughter. It appointed Damien and Jill Wasson (L.W.'s mother), as co-personal representatives of the Rainey Estate. *Id.*

In September 2020 the Claimants began drafting a joint policy limits settlement demand letter to the Limitations Plaintiffs, represented by Attorney Michael Barcott, seeking the limits of their Protection and Indemnity ("P&I") insurance policy. The Claimants knew that the Limitations Plaintiffs' P&I policy was a "wasting policy," from which defense costs are deducted from the policy's available indemnity limits, and that something more than $9 million dollars remained. Attorney Coluccio drafted and circulated a proposed demand letter. His draft concluded:

> In anticipation that this offer will be accepted and policy limits will be paid, *the claimants will submit the appropriate paper work for the Alaska Superior Court's minor approval and payment of any share to any minors.* This offer is further *conditional on the court's approval that settlement*

*within policy limits is in the best interest of any minor child(ren)*. Mr. Markham will endeavor to secure approval as quickly as possible.

We are requesting payment of policy limits and demanding that confirmation of payment be provided within 10 days of this letter.

Dkt. 46-2 (emphasis added). On October 1, 2020, Attorney Markham made what he described[4] as "minor changes" to the draft. He explained that he needed the proceeds (the policy limits) to be deposited in his trust account because he didn't "think the court will approve the minor settlement under our rules without that condition and it has to have jurisdiction over them." Dkt. 46-3. He also suggested that Attorney Barcott wouldn't agree to pay until he (Markham) obtained the minor settlement approval. *Id.*

Attorney Coluccio revised the letter and sent it to Attorney Barcott on October 2. Like the draft, the final demand letter was conditioned on there being at least $9 million left on the wasting insurance policy. In exchange, the claimants agreed to "release the carrier from any liability beyond policy limits, including punitive damages, upon payment of said policy limits." Dkt. 46-5. The letter informed Attorney Barcott that after payment, the claimants will "undertake division of said policy limits among themselves." *Id.*

Attorney Coluccio's demand letter replaced the last sentence in the draft quoted above with the following:

Payment to be made to the Gerald Markham trust account within 10 days after written notice of [] Superior court approval of the minor settlement[.] We are requesting acceptance of this policy limits demand within 10 days of this letter.

---

[4] Attorney Markham asks the Court to consider this extrinsic evidence. Dkt. 46 at 2, n. 2.

*Id.* Attorney Barcott accepted the policy limits demand in a short email dated October 15. Dkt. 46-6.

On November 2, 2020, the parties[5] informed this Court that the Limitation Plaintiffs and the claimants had reached a global settlement in this case, and, among other things, asked the court to strike the trial date. Dkt. 34.

On November 9, 2020, Attorney Markham endeavored to obtain in Alaska approval of the settlement on minor L.W.'s behalf. He did not do so in the pending *Estate of Rainey* probate case; he instead commenced a new, ex parte action, *In re L.W.*, Cause No. 3KO-20-00059PR, in Alaska Superior Court in Kodiak. The case was assigned to Judge Wallace. Attorney Markham apparently filed the bulk of that case under seal, and he sought relief well beyond that court's approval of the global policy limits settlement as in the best interests of minor L.W.

First, Attorney Markham also filed a "confidential" motion for an order *"directing deposit of L.W.'s comingled settlement funds"* into his trust account. Dkt. 65-3 (emphasis added). Second, he sought "an order directing the above entitled relief as ancillary to its probate jurisdiction over the approval of this minor child LW's settlement sought herein and *confirmation of its determination of Brock Rainey's paternity of LW's*." *Id.* (emphasis added). The latter is apparently a reference to Judge Wallace's July 20, 2020 Order

---

[5] Attorney Markham did not sign the notice of settlement. The other parties explained that while Markham agreed that, as between the Limitations Plaintiffs and the claimants, the case was settled, he was reluctant to sign the notice when the minor approval had not yet been obtained. Dkt. 34.

1  opening probate in *Estate of Rainey*, Dkt. 46-1, which Attorney Markham has since

2  claimed is a "final judgment" adjudicating that L.W. is Brock's daughter.

3       Survivors Lawler and Gribble sought and obtained Judge Wallace's permission to

4  intervene and oppose L.W.'s motion. Dkt. 52-2 at 1, 7, and 13.[6] They argued it would be

5  premature to determine the global settlement was in L.W.'s best interest, before it was

6  established that she was entitled to *any* (much less some specific) share of the policy

7  proceeds as Brock's daughter. Dkt. 52-2 at 8. They argued that Attorney Markham was

8  seeking to "boot strap" a finding of entitlement (paternity) into a motion for approval of a

9  still-hypothetical minor settlement. They also argued that the court should not rule in

10  piecemeal fashion, in effect ruling that some future share of the settlement funds would

11  be reasonable. Dkt. 52-2.

12       On December 28, 2020, Judge Wallace held a telephonic hearing, and issued a

13  written Order denying all the Rainey Estate's motions:

14       Mr. Markham asks this court to exercise jurisdiction in a matter that is
   currently before the Federal Court in Washington in the context of a

15  maritime wrongful death action. The minor is an **averred child** of one of
   the decedents[.]

16          ***

17       Mr. Markham's petition seeks to use probate procedures in Alaska to
   have this court issue **an order affecting the disposition of the $9 million

18  in insurance proceeds in the pending federal case**. Intervening survivors
   have asked this court to deny the motions and dismiss the case for **lack of

19  personal jurisdiction**, subject-matter jurisdiction, and based on the prior
   pending case doctrine.

20       The request to have this court issue an **order approving settlement
   and ordering the Washington litigants to release the funds in Mr.**

---

22  [6] The record appears to include only Attorney Markham's Motion, Dkt. 65-3, and
   these three the responsive filings in *L.W.*

**Markham's trust account is denied**. Such an order unnecessarily inserts this court into a previously pending federal maritime action before the Federal Court in Washington.

This court views exercising legal authority over the proceeds at issue in the federal action as an ill-advised assertion [of] its jurisdiction. It is further **unnecessary by the availability of equally efficacious and alternative remedies to vindicate the minor's interests available in federal court**. **The Federal Court issued an injunction to prevent any of the litigants from initiating any further proceedings relating to the matter before it.** This court finds unpersuasive Mr. Markham's reading of the minute order as stating that the federal court urged the litigants to resolve the dispute in the Alaskan trial courts. **The Washington Federal Court is the most legally appropriate forum to resolve disputes issues regarding the settlement proceeds**.

In this court's view the intervenor's suggestion of a federal **interpleader** action, which would result in the depositing of the funds with the federal court in Washington, **is a sensible path forward**. This is the more appropriate course of action which will most likely assure that each individual interest in the insurance proceeds will be appropriately addressed by a **court whose subject matter jurisdiction is unsullied by questions of personal jurisdiction**.

For the foregoing reasons, **this court declines to follow petitioner's invitation to exercising probate jurisdiction**. **Both the *Motion to Show Cause* and the November 9, 2020 *Petition for Court Approval that Settlement within Policy Limits is in Best Interest of the Child* are denied**.

This order is without prejudice to the minor to bring an action in probate at a later date **if** it becomes **legally established** that she has been **denied an appropriate legal remedy by the federal court**.

Dkt. 37-1 (also filed at Dkts. 42-1, 44-1, 46-8, and 65-1) (bolded emphasis added).

The Rainey Estate had filed the same day in *In re L.W.* an "ARCP 90.2 Petition for Court Approval of Settlement of Insurance Death Benefits Claims for Minor Child." This additional request, wholly unrelated to the minor settlement approval outlined in Attorney

Coluccio's letter, involved a separate claim[7] under a separate Accidental Death and Dismemberment (ADD) insurance policy Scandies Rose provided to the ship's crew. That ADD claim arises from Brock's death, but it is not part of this case or this settlement. It is not clear why the motion was filed in *In re L.W.,* and it is not clear what settlement Judge Wallace was asked to approve on behalf of the minor L.W. The Motion itself is rather glaringly not in the record. But the ADD claim has not been settled, as Judge Wallace's Order recognized. Judge Wallace's Order also encouraged Rainey to address any future settlement of the ADD claim to a Washington court:

> It is obvious from the pleading that no settlement has been reached yet. The court will therefore treat this December 28, 2020 petition as prematurely filed and rejects it at this time. Leave is granted to the petitioner to refile this petition once a settlement is reached. But the court further observes that **the child has no connection with the state of Alaska** save the unfortunate death of her father. Therefore, as the minor and personal representative reside in Washington, it appears **clear to this court that the personal representative could obtain relief for the minor for purposes of probating the insurance proceeds through probate court in Washington**.

*Id*. (bolded emphasis added).

In response to these events, at the end of December 2020, the Limitations Plaintiffs, Rousseau-Gano, and Lawler and Gribble asked this Court for a status conference. Dkts. 35, 37, and 38. All parties then reported to the Court on the status of

---

[7] Attorney Markham also filed in December 2020 an additional Alaska case, *Estate of Rainey v. Scandies Rose*, Alaska Superior Court Cause No. 3KO-20-00244 CI. That Jones Act case seeks to recover from Scandies Rose damages arising from an unrelated knee injury Brock suffered on the *Scandies Rose* in October 2017, more than two years before the vessel sank. *See* Complaint in that case, Dkt. 59-4. The "knee" case was also filed in Kodiak, Alaska, and assigned to Judge Wallace. Like the ADD claim, the knee case not part of this case or this settlement.

1  the case and the settlement, and the Court held a telephonic conference on January 14,

2  2020. The Court invited the parties to file motions on the outstanding issues, and they

3  have done so.

4        In the meantime, on January 11, 2021, the Rainey Estate asked Judge Wallace to

5  Reconsider his denial of its motions in *L.W.*, urging him to conclude that he had already

6  determined (1) that Brock was domiciled in Alaska when he died, and (2) that L.W. was

7  his child. Dkt. 44-2, referencing the Alaska Court's July 20, 2020 Order in *Estate of*

8  *Rainey*, Dkt. 46-1.

9        On January 25, 2021, the Alaska Superior Court denied the motion:

10       Reconsideration is hereby denied. On January 14, 2021, the Court received
         a *Notice of Relevant Development*[8] *on Motion for Reconsideration* from

11       Mr. Markham, stating that he intended to file a motion to determine the
         paternity of L.W. In the Court's view, there is no issue outstanding in this

12       matter until Mr. Markham files [a] motion to resolve paternity."

13  Dkt. 57-1. Gribble and Lawler contend that Attorney Markham's various Alaska Motions

14  intentionally violated this Court's Injunction on other proceedings, Dkt. 5. They assert

15  that Judge Wallace ultimately *dismissed L.W.* and ordered the clerk to return to Attorney

16  Markham the sealed pleadings he filed there and would not share with the intervenors.

17  Dkt. 64 at 4, n. 1.

18       The status conference and the resulting motions disclose two major impediments

19  to the global settlement's consummation: (1) how to ensure that the Limitations

20  Plaintiffs' wasting P&I policy limits remain above the settlement-required $9 million,

21  

22       [8] The "relevant development" may well have been the status conference in this
     Court, held the same day. Attorney Markham's January 14 filing is not in the record.

1  and (2) how to determine whether L.W. is in fact Brock's daughter, and thus entitled to

2  some future share of that settlement fund.

3      The Limitation Plaintiffs' contractual obligation to pay the remaining policy limits

4  was conditioned on Attorney Markham's written notice that the minor settlement had

5  been approved by the Alaska Superior Court as in the best interests of the child. Dkt. 46-

6  5. Months later, that condition has not been met. The Alaska Court was instead asked to

7  decide at least two other major issues directly impacting this case (and to address a third,

8  unrelated and unsettled case), and it learned that Brock himself claimed he lived in

9  Indiana just days before he died. *See* Dkts. 68-1, 59-2, and 59-3. Accordingly, the Alaska

10  Court reasonably and pointedly declined to interfere in this case, twice. Dkts. 37-1 and

11  57-1.

12      In the form of a proposed interpleader, the Limitations Plaintiffs now seek to pay

13  the wasting policy limits out of their control, notwithstanding the claimants' failure to

14  provide the agreed-upon written notice of minor settlement approval. They do so in an

15  effort to ensure that the settlement agreement's major condition—that the policy proceeds

16  exceed $9 million—is met.

17      Attorney Markham opposes interpleader, maintaining the settlement agreement

18  requires the funds to be placed in his trust account.[9] The other claimants argue that the

19  Washington Rules of Professional Conduct do not permit an attorney to hold the property

20

21      [9] This is not accurate. Payment into that trust account was conditioned on Attorney
Markham's notice that he had obtained the minor settlement approval. Neither of those

22  events has occurred.

of other claimants in his trust account, and specifically instruct that interpleading funds in order to facilitate a resolution of a dispute over them may be reasonable and appropriate. RPC 1.15A(g). The other parties agree the better solution is for the Limitations Plaintiffs to interplead the funds here, and to "stop the bleeding" on the wasting insurance policy proceeds while other issues are resolved. The Motion for Leave to File a Supplemental Interpleader is addressed below.

Despite Attorney Markham's vigorous claims to the contrary, the second issue, paternity, has not yet been adjudicated. At Attorney Markham's request, the settlement agreement contemplated approval of the minor settlement in Alaska, but it did not address paternity. Rousseau-Gano, Lawler and Gribble concede that if L.W. is Brock's daughter, she is entitled to participate in the division of the settlement fund like the other heirs, at a later stage in this litigation. But for several reasons, they question whether L.W. is in fact Brock's daughter. The parties and the Court agree that if paternity is established, any proposed division[10] of the policy proceeds will require some sort of minor settlement approval. In Washington, that process would involve a guardian ad litem. In Alaska, apparently, such approval may be obtained from a court.

In any event, any approval of a minor settlement—whether the relatively mundane task of opining that a global settlement allowing all claimants to divide policy limits is in

---

[10] If Rainey establishes that L.W. is Brock's daughter, any proposed division of the policy limits among the claimants will presumably also require a formal approval of L.W.'s share. A guardian ad litem's effort and expertise are more likely to be warranted at this later stage. If L.W. is not Brock's daughter, she will not be entitled to a share of the settlement fund, and there will be nothing for a GAL to evaluate.

the best interest of a minor claimant, or the presumably far more complicated future determination that some proposed division of those proceeds is reasonable—necessarily depends on a binding determination that L.W. is Brock's daughter.

In this context, the pending motions are addressed in turn.

## II.   DISCUSSION

**A.     The motion for leave to file a statutory interpleader is GRANTED.**

Lawler, Gribble, and Rousseau-Gano ask[11] the Court to permit the Limitations Plaintiffs to interplead the remaining insurance policies into this Court. The Limitations Plaintiffs agree, and ask that before funds are then distributed to a claimant, that claimant be required to sign a release. These "Joint Moving Parties" argue persuasively that a statutory interpleader is the only ethical way for the Limitations Plaintiffs to pay the funds into the Court's registry, and to preserve the policy proceeds above the required $9 million. *See* 28 U.S.C. § 1335 and RPC 1.15A(g).

They specifically argue that it would violate the applicable Washington Rules of Professional Conduct for an attorney in this case to hold the policy proceeds in his trust account, particularly one outside this state. *See* Dkt. 59-5. This applies to Attorney Barcott, who currently holds the funds in his trust account, and to Attorney Markham, who claims the parties all agreed the funds should be placed in his trust account (based on

---

[11] These claimants, rather than the Limitations Plaintiffs themselves, filed the motion in an understandable attempt to limit the expenditure of attorneys' fees by Limitations Plaintiffs' counsel. Fees incurred by Attorney Barcott are paid from the wasting insurance policy, depleting that fund for the claimants. Attorney Barcott informed the Court at the status conference that more than $9 million remained, but that additional fees or the cost of a bond would bring the remainder below that required mark.

1  his inaccurate claim that that was required in order to obtain minor settlement approval

2  under Alaska law).

3      They also argue that such an interpleader would end the litigation between all of

4  the claimants on the one hand and the Limitations Plaintiffs (and their insurer) on the

5  other, while preserving the settlement fund by obviating the need for Attorney Barcott to

6  continue litigating this settled case at the claimants' expense. That, of course, was the

7  primary feature of the parties' global settlement.

8      Interpleader, the claimants argue, is an ethical "safe harbor" and it promotes

9  judicial economy. It also is a logical step toward the ultimate resolution of the case,

10  which now concerns only damages: how shall the remaining insurance proceeds be

11  divided among the estates and beneficiaries of the four decedents, and the two survivors?

12      The Estates of Rainey, Ganacias, and Cobban oppose an interpleader. At the status

13  conference, Attorney Markham argued that interpleader was not required, and that it

14  would cost more than simply paying the funds into his trust account. Attorney Markham

15  seems to suggest that because the parties agreed to pay the funds there, RPC 1.15A does

16  not apply. [12] He also suggests that funds in the court registry "lose their tax-exempt

17  status," but that concern is not explained and does not immediately make sense. He

18  suggests that Limitations Plaintiffs post a bond instead, but as Attorney Barcott points

19  _____

20      [12] Again, Attorney Markham represented to the other parties that the Alaska Court
    required the funds to be in his Alaska trust account, so it would have jurisdiction to
21  approve the minor settlement. Dkt. 46-3. The Alaska Court was evidently not persuaded
    that was true, and it denied the motions. Attorney Markham has not articulated a
    persuasive reason for allowing the funds to reside in his trust account while the parties
22  move forward on dividing them.

1   out, such a bond would cost 1-2% of the bonded amount, or up to $180,000 in this case.

2   Such a bond, he claims, would reduce the available settlement proceeds under the bond

3   below the required $9 million, and requiring one here is a "uniquely bad idea."

4   Attorney Markham next argues that an interpleader is not required under *Hartford*

5   *Acc. & Indem. Co. of Hartford v. S. Pac. Co.*, 273 U.S. 207 (1927). Claimants point out

6   that the law has changed markedly since that opinion—interpleader was an equitable

7   remedy then, and unlike this case, that case involved a limitation fund. *See* Dkt. 60 at 4-6.

8   *Hartford* is of little moment here. Even if interpleader is not required, there is no

9   persuasive argument against it.

10   The Limitations Plaintiffs accurately claim they have a unilateral right to

11   commence such an action and argue that requiring them to do so in a new, separate case

12   is a waste of time, judicial resources, and, importantly to the parties, the remaining limits

13   available under the policy. A supplemental Interpleader Complaint in this case protects

14   all the claimants, including L.W., and it permits the Limitations Plaintiffs to exit the case

15   with the maximum amount of policy proceeds left to divide among the claimants.

16   Attorney Markham's remaining objection to interpleader is his fear that the other

17   claimants seek a jury trial on the division of the proceeds. The Court makes no ruling on

18   the efficacy of any such effort, but notes that the Estates of Rainey, Ganacias, and

19   Cobban all demanded "trial by jury of all issues of liability and damages" in their

20   Answer. Dkt. 9 at 1 and 10. The Court agrees that a jury trial on the subsequent division

21   of the policy proceeds would be unwise and inefficient, but that is not a basis for denying

22   the otherwise well-taken motion to interplead the funds.

The Motion for Leave to File a Supplemental Interpleader, Dkt. 50, is

**GRANTED**. Limitations Plaintiffs shall file a Supplemental Complaint within 14 days

and shall deposit the settlement funds into the Court's Registry. As part of their

interpleader action, Limitation Plaintiffs shall submit a proposed form of release that they

would require be signed prior to money being disbursed from the interpleader fund. It

will be required that a release be signed by any claimant prior to withdrawing fund from

the interpleader action. The parties are encouraged to work together to develop a form of

release that is acceptable and in accordance with the usual standards in such matters. If

the parties cannot agree on a form of release the Court will determine an appropriate form

in accordance with usual standards for releases in maritime death and injury claims prior

the disbursement of funds.

**B.    The motion for leave to again seek ARCP 90.2 minor settlement approval in Alaska Superior Court is DENIED.**

The Rainey Estate's Motion superficially asks this Court to authorize it to again

seek the Alaska Superior Court's ARCP 90.2 approval of the global settlement as in

minor L.W.'s best interest. Dkt. 52. As Lawler and Gribble point out, Rainey's proposed

order, Dkt. 52-11, suggests that it instead seeks this Court's determination that minor

settlement approval is a probate matter, and that this Court does not have probate

jurisdiction.

Lawler and Gribble also argue that the Alaska Court has already twice denied

Attorney Markham's efforts to obtain such approval (and further relief), in part because it

had doubts about its jurisdiction. The other Claimants also argue persuasively that this

1    Court does not have the power to direct a state court to act on a matter that it has already

2    wisely declined to address, and which is properly pending in this Court.

3         Other than the fact that Attorney Markham successfully inserted into the

4    settlement demand language making the Limitations Plaintiffs' obligation to pay

5    contingent on his obtaining such approval, there is no legal reason that the required

6    approval to be obtained in Alaska, or that it be done through probate. The other claimants

7    argue that state courts do not probate damages in a Jones Act case because the proceeds

8    neither pass within the estate nor are they distributed under state statutes. *See* Dkt. 64 at

9    6-8 (citing *In re Dennison's Estate*, 124 N.Y.S.2d 668, 670 (N.Y. Sur. 1953) ("Damages

10   under [the] Jones Act must be distributed in accordance with the Act rather than the state

11   wrongful death statute. Any recovery of damages . . . must be disposed of and distributed

12   in the same manner as a recovery on a death claim and not as an asset belonging to the

13   decedent's estate.") (other citations omitted)).

14        In any event, the minor settlement approval is no longer the critical issue, if it ever

15   was. The Limitations Plaintiffs will now pay the remaining policy limits into the registry

16   of this Court, even though the minor settlement approval has not yet been obtained. The

17   claim that they have "no duty to do so," Dkt. 55 at 3, does not mean they *cannot* do so,

18   when they are willing to, to save the settlement. This Court can (under LCR 17(c))

19   approve any proposed division of the policy limits as in the best interest of the minor

20   claimant, once it is established that she is Brock's daughter.

21

22

To the extent the Rainey Estate's motion seeks this Court's permission to litigate this issue in Alaska, or asks this Court to encourage Judge Wallace to reverse himself, it is **DENIED**.

The issue that must be addressed first is paternity, not minor settlement approval. The Rainey Estate continues to argue that the Alaska Court already conclusively determined that L.W. is Brock Rainey's daughter, an assertion the other claimants describe as "frivolous."

The July hearing addressed Attorney Markham's motion to "make a finding as to Brock Rainey's presumptive death" (as his body was not recovered). Dkt. 78-8 at 2. The order listed Damian as Brock's son and L.W. as his daughter, but there is no recitation of facts up on which any "finding" as to such status could have been based—there is no evidence or serious argument that paternity was even contested at that hearing. and Rousseau-Gano's attorney was not even present at the hearing.

Attorney Markham claims that even if Attorney Coluccio was not present, he is "in privity" with Lawler and Gribble, who were at the hearing (presumably to testify that Brock died in the sinking). But it makes no sense that the survivors testified about a paternity issue that had not yet arisen, or that their knowledge or testimony on that subject could have been relevant. Rousseau-Gano's attorney, Mr. Coluccio, is no more in privity with Lawler and Gribble's counsel, Mr. Stacey, than he is with Mr. Markham; each represents competing claimants to a finite fund. Rainey's claim that the July hearing was the parties' one chance to dispute paternity is not correct, and Judge Wallace's "order" determining that Brock died in the sinking, and appointing personal

1   representatives, is not a "judgment to the world" on the fact that L.W. was conclusively

2   determined to be Brock's daughter.

3           Judge Wallace's subsequent Orders demonstrate that he does not share Attorney

4   Markham's belief that he already adjudicated this issue at that July hearing. To the

5   contrary, his December Order *denied* Attorney Markham's request that he "confirm" his

6   "determination of Brock Rainey's paternity." *See* Dkt. 65-3. The Order instead describes

7   L.W. as "an *averred child* of one of the decedents[.]" Dkt. 37-1 (emphasis added).

8           Judge Wallace's January 2021 Order Denying Reconsideration reflects that he was

9   not persuaded by Attorney Markham's motion or his supplemental filing, [13] ruling "there

10  is no issue outstanding in this matter unless and until Attorney Markham files a motion to

11  resolve paternity." Dkt. 57-1. Attorney Markham reads this as a potential willingness on

12  Judge Wallace's part to consider the paternity issue, notwithstanding his prior orders

13  explaining why he would not address the settlement approval, payment of policy

14  proceeds into Attorney Markham's trust account, or paternity, and instead deferring to

15  this Court. But that Order cannot be squared with the notion that Judge Wallace already

16  adjudicated the paternity issue.

17          Nor is the "self-authenticating" DNA test Attorney Markham obtained in

18  December 2020 the definitive answer to the paternity question. *See* Dkt. 52-9. The

19  document is no more self-authenticating than any other expert opinion, and as the other

20  claimants point out, no one qualified to interpret or explain it has submitted any evidence

21

22          [13] This filing is not in the record.

1    about how it was conducted or what it means. Claimant Rousseau-Gano's expert, on the

2    other hand, has submitted evidence that that DNA test does *not* prove that L.W. is

3    Brock's daughter, and explains why additional testing is required. *See* Johnson Decl.,

4    Dkt. 67.

5           If and to the extent the Motion asks this Court to determine that paternity has been

6    established, it is **DENIED**.

7           In order to move forward toward the ultimate resolution of this case, the next issue

8    is whether L.W. is Brock's daughter. Apparently without irony, Attorney Markham

9    accuses Attorney Coluccio of "burying" the paternity issue in his Motion to appoint a

10   guardian ad litem, Dkt. 49. *See* Dkt. 55 at 3. But the record demonstrates that the Rainey

11   Estate furtively sought to obtain a paternity ruling in Alaska (or rather, a ruling in *L.W.*

12   that the matter had already been decided in *Estate of Rainey*), in a case filed ex parte and

13   under seal, ostensibly to obtain minor settlement approval.

14          The other claimants have been "up front" about trying to resolve the paternity

15   issue so that the settlement can proceed. They offered to stipulate to a paternity

16   determination in any of several ways: through an agreed testing procedure, through

17   arbitration, through an evidentiary hearing in Alaska, or in this court, possibly through

18   the appointment of a special master. *See* Dkt. 65.

19          Attorney Markham apparently rejected each of these proposals. Nor has he

20   undertaken to establish paternity in Skagit County, Washington, where L.W. lives with

21   her mother. In Washington, the proper venue for a proceeding to adjudicate parentage is

22   "the county in which the child resides." RCW 26.26A.420(1).

1   As the other claimants point out, L.W.'s mother could commence an action to

2   determine paternity in Skagit County Superior Court "next week," under RCW

3   26.26A.030. A paternity claim is a standalone claim and is not a probate matter. L.W.'s

4   paternity is not an issue that has been or must be determined by Judge Wallace in Alaska,

5   in *Estate of Rainey* or *In re L.W.* L.W.'s ultimate entitlement to a portion of the insurance

6   proceeds, they argue, is a Jones Act recovery; it is not a claim to a portion of Brock's

7   estate. Dkt. 64 at 10.

8   There is no showing that the Alaska Court must decide paternity, or that it has

9   jurisdiction to do so, and it has not already done so. Instead, it clearly (and in this Court's

10   view, properly) explained that it will not entertain these issues in light of this pending

11   case. Sending the issue back to a court with questionable connection to the parties and the

12   issues, and which has already persuasively declined to address it, twice, is not appropriate

13   or fruitful. To the extent the Rainey Estate's Motion, Dkt. 52, asks this Court to order that

14   this issue be resolved in Alaska Superior Court, it is **DENIED**.

15   Each of the other identified mechanisms for resolving the paternity issue is

16   reasonable, and the Court is hopeful that this Order will lead to an agreement on how to

17   resolve the issue quickly, fairly, and transparently.

18   **C.     The motion for appointment of an Independent Settlement Guardian ad litem is Denied without prejudice.**

19   Rousseau-Gano asks the Court to appoint an independent guardian ad litem in this

20   case to evaluate the settlement on L.W.'s behalf under LCR 17(c). Dkt. 49. He suggests

21   that the GAL could also oversee the paternity testing that is sure to be part of the

22

resolution of that issue, and that position is not without merit in the context of this case. There are, however, numerous ways that L.W.'s paternity can be resolved. If the parties cannot agree on a mechanism, there is a clear alternative through the Washington statutory scheme designed for that purpose. If L.W. is Brock's daughter, the Court will appoint an independent GAL to evaluate the settlement on her behalf. But if she is not, there will be nothing for the GAL to evaluate. The Motion to Appoint a guardian ad litem, Dkt. 49, is **DENIED** without prejudice.

## III.  CONCLUSION

The Motion for leave to file a supplemental statutory interpleader, Dkt. 50, is **GRANTED**. The Motion to seek ARCP 90.2 approval, Dkt. 52, is **DENIED**. The Motion to appoint a guardian ad litem is **DENIED** without prejudice.

The parties shall meet and confer and file a short joint status report on the status of efforts to resolve the paternity issue within **21 days**.

**IT IS SO ORDERED.**

Dated this 14th day of June, 2021.

BENJAMIN H. SETTLE
United States District Judge