UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF THE SCANDIES ROSE FISHING COMPANY LLC AND MATTSEN MANAGEMENT LLC, AS OWNERS AND/OR OPERATORS OF THE VESSEL SCANDIES ROSE, OFFICIAL NUMBER 602351, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CASE NO. C20-5376 BHS<br><br>ORDER |

THIS MATTER is before the Court on Claimants Gribble and Lawler's (for ease of reference, "Gribble") Motion to Dismiss Claimants Rainey, Cobban, and Granacias's ("Rainey") claims for: (1) comparative fault, (2) the cost of recovering the decedents' remains, (3) loss of comfort and society, (4) loss of future earnings, and (5) loss of inheritance. Dkt. 114. Each claim is asserted in Rainey's Amended Answer, Dkt. 111.

The factual and procedural history of this case has been previously detailed and need not be repeated here. In short, the fishing vessel *Scandies Rose* iced up and sank in rough seas off the Alaska Peninsula, less than 3 miles from Sutwick Island, Alaska, on December 31, 2019. On April 17, 2020, Scandies Rose Fishing Company (the vessel's owner and operator) and Mattsen Management (the provider of management services to

the vessel) (together "Scandies Rose") commenced this admiralty action for exoneration or limitation of liability. Dkt. 1. All the claimants Answered. The estates of the deceased assert wrongful death and survival actions for damages under the Jones Act and general maritime law.[1] *See* Dkts. 14 and 17 (Amended Answers). The survivors allege that the *Scandies Rose* was not seaworthy and that its owners and management were negligent. They seek all permissible damages under the law. Dkts. 6 and 7.

The claimants and Scandies Rose reached a tentative settlement, which was ultimately finalized. Consistent with that settlement, Scandies Rose filed a Supplemental Complaint in Interpleader, Dkt. 88, and interpled the balance of its insurance policy into the Court Registry. *See* Dkt. 104. The claimants have since filed "Responses" to Scandies Rose's Supplemental Complaint. Dkts. 106 (survivor claimant Gribble), 107 (survivor claimant Lawler), and 108 (claimant Estate of Rousseau-Gano). The Estates of Rainey, Cobban, and Granacias filed an Answer to the Supplemental Complaint, which included a crossclaim against Gribble. Dkt. 111.

Rainey's Crossclaim asserts that survivor Gribble caused the sinking because he brought marijuana on board the *Scandies Rose* and was under its influence when he was on watch hours before the vessel sank. *Id.* at 5. Rainey asserts that Gribble's contributory or comparative fault should reduce the damages he may recover from the settlement fund. *Id.* Rainey also asserts claims for various categories of damages that Gribble argues are not recoverable in this case. *Id.* at 6–7.

---

[1] The Claimants do not assert claims under the Death on the High Seas Act (DOHSA), presumably because *Scandies Rose* sank less than three nautical miles off the coast of Alaska.

Gribble seeks dismissal of Rainey's negligence crossclaim, and dismissal of Rainey's claims for the damage categories described above. Dkt. 114 at 9–18. Gribble also asks the Court to sanction Rainey's attorney under Fed. R. Civ. P. 11, arguing that the assertion of the comparative fault claim and the claims for these categories of damages are frivolous in light of long-standing, binding authority. *Id.* at 18–24.

The issues are discussed in turn.

## I.  DISCUSSION

**A.  Legal Standard**

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the Complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**B.     Rainey's comparative negligence claim against Gribble is DISMISSED.**

Rainey's Amended Answer and Crossclaim, Dkt. 111, asserts that Gribble negligently caused the sinking:

> [T]he damages of Dean Gribble must be reduced by his ***comparative negligence per se*** for having knowingly brought ***illegal marijuana*** on board the *Scandies Rose* and there consumed same immediately before and while he was operating said vessel at her helm on watch contrary to Federal and Alaska State law as well as the employment rules of Scandies Rose Fishing Company, and Mattsen Management, LLC prohibiting same and also requiring full disclosure or his prior drug and alcohol addictions and problems and that ***said acts were a proximate cause of the sinking*** of the vessel and also any fear or paranoia he allegedly suffered after escaping the vessel while thereafter in the water and in its life raft.

Dkt. 111 at 5 (emphasis added).

Gribble asks the Court to dismiss Rainey's crossclaim under Fed. R. Civ. P. 12(b)(6). He argues that there is no negligence cause of action under general maritime law, and that the Jones Act created a negligence claim only against the employer. Dkt. 114 at 9 (citing *Allen v. United States*, 338 F.2d 160, 162 (9th Cir. 1964)). Gribble argues and demonstrates that a seaman crewmember therefore has no negligence claim against a fellow crewmember. *Id*. (citing *Cal. Home Brands v. Ferreira*, 871 F.2d 830, 835 (9th Cir. 1989) ("In short, there is no support in either traditional or modern maritime case law for [the argument] that one seaman may sue a fellow crewmember for negligence.").

In response to Gribble's argument that comparative negligence is not a plausible claim in the context of this case, Rainey sought and obtained an extension of time to respond so that he could travel to Kodiak, Alaska, to obtain evidence in support of his claim that Gribble used marijuana. Dkts. 116 and 118. After the extended deadline passed, Rainey submitted evidence that he claims supports his claims. Dkt. 121. This was a waste of Rainey's, his adversaries', and the Court's, time: a Rule 12(b)(6) motion challenges the viability of a party's pleading, not the sufficiency of his evidence.

Rainey's briefing in support of his comparative negligence claim is difficult to follow.[2] Rainey criticizes Gribble for referencing the NTSB Report on the sinking in a Rule 12 motion, but he also seeks to submit evidence demonstrating that Gribble used marijuana. Dkt. 120 at 3–4. Substantively, he cites three cases involving a *collision* (two between two vessels, and one between two airplanes) in which comparative fault for the accident was discussed—though none holds that one seaman in a single vessel accident may sue another for negligence. Dkt. 120 at 4–6 (citing *Oldham v. Pritchett*, 599 F.2d 274, 280–281 (8th Cir. 1979); *Great Lakes Ins. SE v. Dunklin*,[3] 510 F. Supp. 3d 1091 (S.D. Ala. 2021); and *Reliance Nat's Ins. v. Great Lakes Aviation, Ltd.*, 340 F. Supp. 2d 936 (C.D. Ill. 2004)).

---

[2] The heading of the section addressing this issue is "Rainey et al makes no claim for damages against Gribble opposition to his to the Res of the Interpleader funds." Dkt. 120 at 3. The meaning of this argument is not clear.

[3] *Dunklin* did confirm that when multiple claimants in an admiralty case seek a limited insurance fund, the stakeholder insurer is entitled to interplead the policy limits, just as has happened in this case—over Rainey's continued objection. *See* Dkt. 111 at 6, ¶ 1.

None of these cases stand for the proposition that one seaman crewmember may assert a contributory negligence claim against a fellow crewmember under the Jones Act or general maritime law. Rainey does not even address *Ferreira*, which is directly on point, and he does not articulate any basis for recognizing an exception to, or an extension or reversal of, the well-established, existing state of the law. The authorities he cites involve entirely different factual circumstances and he makes no effort to explain how or why the reasoning in those cases should apply here. As Gribble amply demonstrates, the comparative fault affirmative defense is available only to the employer. Dkt. 114 at 12 (citing 43 U.S.C. § 53).

Gribble's Motion to Dismiss Rainey's crossclaim for contributory or comparative negligence per se is GRANTED and that claim is DISMISSED with prejudice.

**C.    Rainey's claim for the cost of recovering the decedents' bodies is DISMISSED.**

Rainey's Answer asserts a claim for the cost of recovering the decedents remains:

> [C]laimants' seek their decedents seeks funeral, burial and memorial expenses (including the costs of recovering their deceased's remains) pursuant to their duty under *In re Sincere Nav.Corp.*, 327 F.Supp. 1024 (E.D.La. 1971) despite the fact that the ROV video of it showed it sank in relatively shallow water and the bodies of at least two of their deceased were trapped in its wheel house (and given the circumstances of the loss described by the survivors likely all were).

Dkt. 111 at 4–5 (verbatim); *see also* Dkt. 109 at 7 (Joint Status Report) (Rainey seeks $1.3 million for the costs he "will have to incur due to the Scandies Rose's failure[4] to make any efforts to recover their deceased's remains[.]")

Gribble seeks dismissal of this claim under Rule 12(b)(6), arguing that the Ninth Circuit has never recognized such damages as a cognizable claim. Dkt. 114 at 15.

Rainey does not respond to this argument, and Gribble correctly argues that this failure is a concession that his motion has merit. *See* W.D. Wash. LCR 7(b)(2) ("Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

The case upon which Rainey's claim was initially based, *In re Sincere Navigation Corp.*, 327 F. Supp. 1024 (E.D. La. 1971) appears to be the only reported case suggesting that a vessel owner has a broad duty to recover the remains of deceased seamen, and it did not address whether the cost of doing so was a portion of the decedents' damages. There was no such claim in that case. *In re Sincere* is not support for Rainey's claim that the cost of recovering deceased seamen's remains from the ocean is an element of damages in any maritime claim. As Gribble amply demonstrates, the "exhaustive" list of damages available in a maritime case does not include the cost of recovering bodies. Dkt.

---

[4] The Court recalls that somewhere along the circuitous course of this case, Attorney Markham boasted that he had taken the lead in successfully convincing the State of Alaska that the sunken vessel was not an environmental or navigational hazard, and that Scandies Rose need not incur the cost of raising it. This effort preserved the policy limits available for the claimants to divide.

ORDER - 7

114 at 2–3 (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 20 (1990) and *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 430 (9th Cir. 1994)).

Gribble's Motion to Dismiss Rainey's claim for the cost of recovering the decedent's remains is GRANTED and that claim is DISMISSED with prejudice.

**D.     Rainey's claim for loss of society is DISMISSED.**

Rainey asserts a claim for loss of society and comfort. Dkt. 111 at 5. Gribble asks the Court to dismiss this claim under Rule 12(b)(6), arguing that such non-pecuniary damages are not recoverable in a Jones Act case or under general maritime law. Dkt. 114 at 17 (citing *Nygaard v. Peter Pan Seafoods, Inc.*, 701 F.2d 77, 79–80 (9th Cir. 1983) ("[W]e now follow the Fifth Circuit and First Circuit in holding that loss of society is not recoverable.")).

Rainey responds that the law of damages in maritime cases is "still in in its infancy," and that many state courts "avoid this problem by holdings that say loss of society can have a pecuniary value." Dkt. 120 at 6 (citing, as to the latter point, *Corder v. Corder*, 161 P.3d 172 (Cal. 2007)). He argues that it is not a Rule 11 violation to assert a position that "could become law." *Id*. This is a concession that the existing law does not support his claim.

Gribble replies that notwithstanding *Corder*—which involved a construction accident, not a maritime loss—the Supreme Court and the Ninth Circuit have unambiguously held that loss of society is not an available remedy in a seaman's wrongful death case, under the Jones Act, the general maritime law, or DOHSA; such a

claim seeks an unrecoverable "non-pecuniary loss," as a matter of law. Dkt. 122 at 11 (citing *Miles*, 498 U.S. at 20, and *Nygaard*, 701 F.2d at 78).

Rainey's claim that maritime damages law is "in its infancy" is bold, given that the Jones Act is 101 years old. It is also incorrect, as is demonstrated by the age of the cases upon which Rainey relies and upon which the issues presented are resolved. His citation to *Corder* is not enough to persuade this Court to ignore binding, well-settled, on-point and directly contrary authority. It cannot and would not overrule those authorities. Gribble's Motion to Dismiss Rainey's loss of society (and comfort) claim(s) is GRANTED and that claim is DISMISSED with prejudice.

**E.   Rainey's claim for future earnings is DISMISSED.**

Rainey asserts a claim for loss of future earnings. Dkt. 111 at 5. Gribble seeks dismissal of these claims under binding Ninth Circuit precedent. Dkt. 114 at 17–18 (citing *Davis*, 27 F.3d at 430 ("*Miles* instructs the lower federal courts that a claim for lost future earnings is not available in connection with a maritime death for which Congress has already provided a remedy and has excluded such damages.")).

Rainey's response does not address this argument, and the Court deems his failure a concession that the motion has merit. LCR 7(b)(2). Gribble's Motion to Dismiss Rainey's loss of future earnings claim is GRANTED, and it is DISMISSED with prejudice.

**F.   Rainey's claim for loss of inheritance is DISMISSED.**

Finally, Rainey asserts a claim for loss inheritance. Dkt. 111 at 5. Gribble argues that this is essentially another label for a loss of future earnings claim, similarly

prohibited by *Miles* and *Davis*. He relies on a case from this district so holding, *Ludahl v. Seaview Boatyard*:

> Common sense dictates that if lost future earnings are not recoverable under DOHSA, then loss of inheritance would also not be recoverable. *See Hopper*, 1992 A.M.C. at 1087, 1991 WL 267798 ("The Supreme Court has also disallowed claims for a decedent's lost future earnings. In essence, plaintiff's claim for loss of prospective inheritance asserts such a claim...."); *see also* Charles M. Davis, *Maritime Law Deskbook* 153 (1994) ("Whether maritime law permits recovery for loss of inheritance was put into doubt by *Miles*.")

869 F. Supp. 825, 827 (W.D. Wash. 1994).

Rainey (and Rousseau-Gano, Dkt. 119) cite to a later, out-of-District case holding the opposite, *Rohan v. Exxon Corp.*, 869 F. Supp. 666 (S.D. Tex. 1995). Rainey also asserts that the Ninth Circuit has "declared" that "loss of inheritance is recoverable," Dkt. 120 at 7 (citing *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1350 (9th Cir. 1987). Rousseau-Gano argues that the Ninth Circuit has not directly ruled on the issue. Dkt. 119 at 3.

Gribble replies that *Bergen* pre-dates *Miles* and its clear holding that loss of future earnings is not cognizable and is thus not authority for recognizing a loss of inheritance claim in this Circuit. He reiterates that loss of inheritance is tangential to loss of future earnings. Dkt. 122 at 12.

*Rohan* recognized the similarity in proof of a loss of future earnings claim and a loss of (support and) inheritance claim (under DOHSA), but held that they are not the same claim: "Clearly, these two remedies [loss of support and inheritance] both depend on a calculation of the future income of a decedent, but they are *not*, strictly speaking, a

recovery for future earnings." 869 F. Supp at 673 (emphasis in original). It recognized that, after *Miles*, some courts have disallowed loss of future earnings claims while allowing claims for loss of support and inheritance as distinct and separate remedies under DOHSA. *Id*.

*Rohan* is persuasive and well-reasoned, and the fate of this claim presents a much closer question than those dismissed above. But *Rohan*'s holding is not consistent with this Court's reading of the prevailing authority in this Circuit and this District on the availability of a loss of inheritance claim under the Jones Act or general maritime law.

Gribble's Motion to Dismiss Rainey's loss of inheritance claim is GRANTED and that claim is DISMISSED with prejudice.

**G.     Gribble's claim for Rule 11 Sanction is GRANTED.**

Gribble argues that the claims addressed and dismissed in this Order were not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, in violation of Fed. R. Civ. P. 11(b)(2). It argues that the Amended Answer asserting them was frivolous, and that the Court "must" impose sanctions. Dkt. 114 at 19 (citing *Townsend v. Holman Consulting Corp*., 929 F.2d 1358 (9th Cir. 1991)). Under *Townsend*, a pleading is frivolous if it is baseless and made without reasonable and competent inquiry. *Id*. at 1362.

Rainey's response on this issue mostly accuses his adversary of Rule 11 violations for referencing the NTSB Report. He does not contend he is entitled to argue for an extension or modification of existing law, and even if he had, he has not made any such argument. *See WSB Elec. Co., Inc. v. Rank & File Comm. to Stop the 2-Gate Sys.*, 103

1  F.R.D. 417, 420 (N.D. Cal. 1984) ("Plaintiff's counsel contend that they are entitled to
2  make an argument for the extension or modification of existing law. Their difficulty,
3  however, is that they have not advanced one.")

4  Attorney Markham has demonstrated his decades of experience in admiralty law,
5  litigating more than 30 death cases. He is a specialist in this area, and he had to know that
6  these claims were not viable. This is a trial court, unable to reverse the authorities which
7  guide its decisions, or to create new law. Attorney Markham has not articulated any
8  argument for extending or modifying the existing law, which plainly and consistently
9  rejected four of the claims he asserted. He was demonstrably provided these authorities
10 before this motion was filed, and he declined to withdraw the claims.

11 The Court concludes that Rainey's assertion of a comparative negligence claim
12 against Gribble was frivolous under Rule 11. The same is true with his damage claims for
13 the cost of recovering the decedents' remains, and for loss of society and future earnings.
14 The motion for Rule 11 sanctions is therefore GRANTED as to the assertion of these
15 claims.

16 The sanction, payable to Gribble's counsel, shall be **50% of the fees Gribble's**
17 **counsel incurred** in bringing this motion, including the effort to persuade Rainey's
18 counsel to withdraw the claims without the necessity of the motion. If necessary, counsel
19 shall submit a short motion within 14 days of this order, noted for three Fridays out. The
20 parties are encouraged to instead inform the Court that the sanction has been paid.

21                               \*\*\*

1  The Court is aware of at least two outstanding issues requiring resolution before
2  the matter may be finally decided: L.W.'s paternity, and a dispute over the status of the
3  Granacias's claim. The parties shall file a short Joint Status Report on the state of these
4  issues and a timeline for resolving them, within 14 days.
5  IT IS SO ORDERED.
6  Dated this 1st day of November, 2021.

BENJAMIN H. SETTLE
United States District Judge