UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF THE SCANDIES ROSE FISHING COMPANY LLC AND MATTSEN MANAGEMENT LLC, AS OWNERS AND/OR OPERATORS OF THE VESSEL SCANDIES ROSE, OFFICIAL NUMBER 602351, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CASE NO. 3:20-cv-5376 BHS<br><br>ORDER |

THIS MATTER is before the Court on Claimant Dean Gribble's Rule 12(c) Motion for Judgment on the Pleadings on Claimant Erik Cobban's claims. Dkt. 136. Erik Cobban is decedent seaman David Cobban's younger brother. He asserts that he is autistic and that he was dependent on David. David's mother, Elgia, has also asserted claims based on David's death. David's sister, Barbara, is the Personal Representative of David's estate. *Id.*

Gribble asserts that the Jones Act has three hierarchical classes of beneficiaries for claims arising from the death of a seaman:

> [I]n case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents;

ORDER - 1

>    and, ***if none***, *then of the next of kin dependent upon such employee*, for such injury or death resulting in whole or in part from the negligence[.]

45 U.S.C. § 51[1] (emphasis added). Gribble argues that, because David Cobban had no spouse or children, only his second-tier beneficiary—his mother—may assert a Jones Act claim. The third-tier beneficiary—David's next of kin, Erik—could assert a claim only if there were no second-tier beneficiaries. But since there is a second-tier beneficiary, Erik cannot assert a claim. Dkt. 136 at 2.

Cobban argues that while Personal Representative Barbara Cobban is asserting a Jones Act claim on mother Elgia's behalf, she is not asserting a Jones Act claim on dependent brother Erik's behalf; his claim is instead under the general maritime law and, "arguably, [the Death on the High Seas Act]." Dkt. 138 at 5.

Cobban's Response includes a footnote informing the Court that the case almost settled at mediation, but that Gribble would not agree to the mediator's proposal. Dkt. 138 at 4 n.3. Gribble asks the Court to Strike this filing and to impose Rule 11 sanctions for violating the confidentiality of the mediation process. Dkt. 141.

The factual and procedural history of this case has been previously detailed and need not be repeated here. In short, the fishing vessel *Scandies Rose* iced up and sank in rough seas off the Alaska Peninsula, less than 3 miles[2] from Sutwik Island, Alaska, on December 31, 2019. On April 17, 2020, Scandies Rose Fishing Company, LLC (the

---

[1] This statute, the Federal Employees Liability Act ("FELA"), is incorporated into the Jones Act.

[2] The parties generally agree that *Scandies Rose* sank 2.8 nautical miles from Sutwik Island. The NTSB report determined that it sank "about 2.5 [nautical] miles south of Sutwik Island." Dkt. 115-4 at 22.

vessel's owner and operator) and Mattsen Management LLC (the provider of management services to the vessel) (together "Scandies Rose") commenced this admiralty action for exoneration or limitation of liability. Dkt. 1. All the claimants Answered. The estates of the deceased assert wrongful death and survival actions for damages under the Jones Act and general maritime law. *See* Dkts. 14 and 17 (Amended Answers). The survivors allege that *Scandies Rose* was not seaworthy and that its owners and management were negligent. Dkts. 6 and 7. They seek all permissible damages under the law. *Id.*

The claimants and Scandies Rose reached a tentative settlement, which was ultimately finalized. Consistent with that settlement, Scandies Rose filed a Supplemental Complaint in Interpleader, Dkt. 88, and interpled the balance of its insurance policy into the Court Registry. *See* Dkt. 104. The parties have since litigated the viability and measure of each other's claims to the limited settlement fund. Absent an agreed resolution, a jury trial is scheduled for January 10, 2023, to determine in some fashion the various claimants' entitlement to a share of the settlement fund. Dkt. 152.

The issues are discussed in turn.

## I. DISCUSSION

**A.     Rule 12(c) Standard.**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible

on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the Court must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vazquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

      Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, Rule 12(c) is "functionally identical" to Rule 12(b)(6) and "the same standard of review" applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir.1989)); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (applying *Iqbal* to a Rule 12(c) motion).

      On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not

possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.  Erik Cobban has no Jones Act claim.**

As an initial matter, it is clear from the text of 45 U.S.C. § 51 that Erik Cobban is a third-tier beneficiary, and thus that he does not have a Jones Act negligence claim in the presence of a claim by a second-tier beneficiary, his mother Elgia. Erik affirmatively disavows any such claim and represents that he never intended to assert such a claim. Dkt. 138 at 2–3, 5. Thus, Gribble's Motion for Judgment on the Pleadings as to Erik Cobban's Jones Act claim is GRANTED and that claim is DISMISSED with prejudice.

**C.  Erik Cobban has no DOHSA claim.**

Second, it is also beyond debate that *Scandies Rose* sank in Alaska territorial waters, less than three nautical miles from shore, near Sutwik Island. The Death on the High Seas Act ("DOHSA") applies to any death (not just of a seaman) on the "high seas," which unequivocally means more than three nautical miles offshore. DOHSA also provides a schedule of beneficiaries who may sue for a death occurring on the high seas, which is broader than the list for Jones Act claimants:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.

The fact that *Scandies Rose* may have begun to "ice up" more than three miles from land is not relevant; the statute applies, or not, based on the site of the accident. DOHSA facially does not apply. Gribble's Motion for Judgment on the Pleadings as to any arguable claim under it is GRANTED, and if and to the extent Erik Cobban asserts a DOHSA claim, it is DISMISSED with prejudice.

The availability of DOHSA damages for a general maritime law claim based on a seaman's death in territorial waters, and the beneficiaries who may recover them, are discussed below.

**D.    A claim under the general maritime law arising from the death of a seaman in territorial waters is limited by the Jones Act.**

Erik argues that he may assert a claim under the general maritime law, whether or not he also has a Jones Act or a DOHSA claim. Dkt. 138 at 6. Gribble argues that because David was a seaman, and because *Scandies Rose* sank in territorial waters, the claims arising from his death are governed by the Jones Act.

The general maritime law derives primarily from *Moragne v. States Marine Lines, Inc.*, which reversed longstanding admiralty precedent and held that "an action does lie under general maritime law for death caused by violation of maritime duties." 398 U.S. 375, 409 (1970). *Moragne* left open for "further sifting through the lower courts in future litigation" the proper schedule of beneficiaries who may assert such wrongful death claims. *Id*. at 408.

Perhaps unsurprisingly, this sifting continues. In 1990, the Supreme Court confirmed that *Moragne*'s general maritime law applies to seamen. *Miles v. Apex Marine Corp., Inc.*, 498 U.S. 19, 30 (1990) ("[T]oday we make explicit that there is a general maritime cause of action for the wrongful death of a seaman[.]"). But *Miles* also explained that the seaman's recovery in a general maritime law case was necessarily limited by the Jones Act:

> We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them. Congress has placed limits on recovery in survival actions that we cannot exceed. Because this case involves the death of a seaman, we must look to the Jones Act.

*Id*. at 36. Accordingly, consistent with the Jones Act, the Court held that the damages recoverable in a general maritime cause of action for the *wrongful death* of a seaman do not include loss of society:

> The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss. The general maritime claim here alleged that [the decedent seaman] had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Id.* at 32–33. *Miles* similarly held that the Jones Act precluded a *survival* action seeking to recover the decedent seaman's lost future earnings: "Because [decedent's] estate cannot recover for his lost future income under the Jones Act, it cannot do so under general maritime law." *Id*. at 36.

1    *Miles* makes clear that a general maritime claim arising from the death of a
2    seaman in territorial waters is limited by the Jones Act. It did not expressly hold that the
3    Jones Act's hierarchical schedule of beneficiaries also applies, but its reasoning leads
4    only to the conclusion that it must.
5    Erik Cobban responds by citing a general maritime law case, *Sutton v. Earles*, 26
6    F.3d 903, 916 (9th Cir. 1994). Dkt. 138 at 6. He argues that *Sutton* analogously involved
7    multiple deaths in territorial waters, and that it affirmed that nondependent parents could
8    recover for loss of society. *Id*. But *Sutton* did not involve the death of a seaman; it
9    involved the deaths of civilians arising from an allision[3] between a between a pleasure
10   boat a Navy buoy. *Sutton*, 26 F.3d at 906. *Sutton* demonstrates that the Jones Act applies
11   where the decedent is a seaman, and that it does not when the decedent is not. The Jones
12   Act did not apply to the facts of *Sutton*, and as a result, neither did its limitations on the
13   available damages.
14   The Ninth Circuit made this distinction clear in *Davis v. Bender Shipbuilding &*
15   *Repair Co., Inc.*, 27 F.3d 426, 430 (9th Cir. 1994), which distinguished *Sutton* and held
16   that *Miles* precluded a survival claim for a decedent seaman's lost future earnings; the
17   Jones Act limited the survival rights to injuries sustained during a seaman's lifetime.
18   "[M]ore expansive remedies may not be recovered on behalf of a seaman under federal
19   general maritime law." *Id*. at 430. *Davis* explicitly rejected the claim that DOHSA
20   applied, rather than the Jones Act, where the death occurred in territorial waters, not on

---

[3] An "allision" involves contact between a moving ship and a stationary object. The more familiar "collision" occurs between two moving objects.

the high seas: "DOHSA, however, provides a remedy only for death on the high seas, not for death in state territorial waters, the waters within one marine league from shore." *Id*. at 428.

This latter distinction was also recognized in the other case upon which Erik relies, *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 624 (1978) ("It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute."). *See* Dkt. 138 at 8.

The statute that applies to the death of a seaman in territorial waters is the Jones Act, and each of these cases hold that the Jones Act's limitations apply to the seaman's estate's general maritime law wrongful death and survival claims. Under the Jones Act, a third-tier beneficiary may assert a claim only where there is no first- or second-tier beneficiary. Here, there is no first, but there is a second.

Erik Cobban has denied that the Jones Act has *any* application to his general maritime law claim. He certainly has not made the case that, while the Jones Act's damage limitations apply to a general maritime law claim arising out of the death of a seaman in territorial waters, the Jones Act's schedule of beneficiaries is nevertheless supplanted by DOHSA's broader schedule in such a case. That would be a novel holding. Erik's claims are not viable under the general maritime law because that law cannot conflict with the Jones Act. This is not a radical conclusion; it is plainly dictated by Congress and the Supreme Court.

Gribble's motion for judgment on the pleadings as to Erik Cobban's claims, Dkt. 136, is GRANTED, and those claims are DISMISSED with prejudice.

**E.  Gribble's Motion for Sanctions is Denied.**

Cobban disclosed in his Response to Gribble's motion, Dkt. 138 at 4 n.3, that Gribble was the hold out at the unsuccessful December 2021 mediation. Gribble filed a separate motion to strike this filing under Rule 12(f). Dkt. 141. He argues that it violated Local Rule 39.1's clear articulation of a well-known rule against disclosing settlement negotiations to the trial court:

> (6) *Confidentiality*. Except as otherwise required by law or agreed by the litigants, or otherwise provided by this rule, all ADR proceedings under this rule, including communications, statements, disclosures and representations made by any party, attorney or other participant in the course of such proceeding, *shall, in all respects, be confidential*, and shall not be reported, recorded, placed in evidence, disclosed to anyone not a party to the litigation, [or] made known to the trial court or jury[.]

LCR 39.1(a)(6) (emphasis added). Gribble asks the Court to strike the offensive portion of Cobban's brief and to sanction his counsel, up to and including revocation of his *pro hac vice* status.

Cobban's Response, Dkt. 146, argues primarily that it is improper to file a separate motion to strike a brief under Rule 12(f), which pertains to striking portions of *pleadings*. He correctly argues that motions to strike material in a *brief* should instead be filed under Local Rule 7(g), which requires that the filing *not* be in a separate motion:

> Requests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will be considered with the underlying motion.

Cobban finds it *ironic* that one complaining about a violation of an ethical obligation of confidentiality himself violated a rule about the form a motion to strike should take. Dkt. 146 at 1. He asks the Court to strike the motion to strike itself as improper, and suggests that by violating LCR 7(g), Gribble has waived any right to complain about Cobban's violation of Rule 39.1. *Id*. at 3–4.

Any irony is lost on the Court; the rule "violations" are not of the same ilk. One is an ethical violation that should be plain to any lawyer and the other is a procedural foot fault of minimal consequence. Cobban's motion to strike or deem waived Gribble's underlying motion to strike and for sanctions is DENIED.

As to the substance, Cobban describes his violation as an "innocent error" caused by the "relatively recent development" of mediation, which is not common in Alaska, Dkt. 146 at 6–7. This is not plausible. Mediation is hardly new, and Counsel has taken every opportunity to inform the court and the parties that he has sailed in these waters longer than anyone.

It is also not persuasive, particularly because counsel simultaneously argues that his disclosure was justified because Gribble "opened the door." *Id*. (referencing Dkt. 136 at 3–4). But the cited language does not disclose any confidential "settlement negotiations"—it reflects Gribble's reasonable effort to persuade counsel to agree to the dismissal of Erik's claim, in light of his mother's claim. There is nothing improper about the information Gribble disclosed, and it does not warrant or excuse Cobban's violation of Rule 39.1.

1     Finally, Cobban suggests that there is no federal mediation privilege anyway, so
2  his disclosure did not really violate anything. Dkt. 146 at 9. This argument is similarly
3  inconsistent with the claim that the disclosure was a "humble," "good faith" error made
4  despite counsel's best efforts. *See id.* at 8. In short, Cobban's filing does not reflect any
5  contrition. It does not sincerely acknowledge that he did anything wrong; it is instead a
6  list of flimsy excuses. Gribble's motion to strike the footnote is therefore GRANTED,
7  and footnote 3 on page 4 of Dkt. 138 is STRICKEN.

8     The Motion for Sanctions is also GRANTED. It is rare for the Court to sanction
9  the same party a second time in the same case, and perhaps unprecedented to do so three
10 times. And to be clear: there has been other sanctionable conduct in this case. Counsel
11 was far less than candid with this court about the proceedings in Alaska, and it appears he
12 was not candid with the Alaska Court about what was happening here. *See generally* Dkt.
13 87. Had the Court been in a position to sanction counsel over his bold and baseless
14 attempt to have the Alaska Court put the insurance proceeds in his own trust account (as
15 an alleged "requirement" of minor settlement approval), it likely would have done so.
16 The sharp litigation practices evident in this case are beneath an attorney practicing in
17 this Court, perhaps especially when he is doing so *pro hac vice*. The Court takes ethical
18 obligations seriously, and counsel's response implicitly reveals that he views them on the
19 same level as a local rule providing that a motion to strike should be included in a
20 responsive brief. This is a troubling view.

21    Nevertheless, the Court will not, at this time, revoke Counsel's *pro hac vice* status.
22 It will Order him to pay the attorney cost of the Motion to Strike and for Sanctions, Dkt.

1  141, including the reply, Dkt. 151. The Court would prefer if the parties again informed

2  the Court that the matter has been resolved. If not, the amount of fees can be addressed in

3  a short motion.

4  The Court expects that the parties can conclude this long journey with no further

5  such filings. If there are, the consequences may include revocation. The Motion for

6  Sanctions, Dkt. 141, is GRANTED.

7  **IT IS SO ORDERED.**

8  Dated this 25th day of May, 2022.

BENJAMIN H. SETTLE
United States District Judge